UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) 2:23-CR-120 |
| vs. | ) |
| TIMOTHY ROBERT MALONE, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Defendant filed a Motion to Suppress and Memorandum in support [Docs. 118 & 119] seeking the suppression of evidence obtained during a July 1, 2023 traffic stop of the vehicle in which Defendant was a passenger. The United States filed a Response in opposition to Defendant's Motion [Doc. 127]. The Court held a hearing to address the Motion on February 27, 2024. Present at the hearing were Defendant and his counsel, Jerry W. Laughlin, Esq., and Assistant United States Attorney B. Todd Martin. Basil Williams and Officer Skyler Greene were called to testify by the United States. This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. The matter is now ripe for resolution. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Suppress [Doc. 118] be **DENIED**.

### I. BACKGROUND

On October 11, 2023, a federal grand jury returned an indictment against Defendant charging him with conspiracy to distribute 50 grams or more of methamphetamine in violation of

21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). The basis for the charge was methamphetamine that officers located during a search of Defendant's person vehicle during the July 1, 2023 traffic stop.

In his Motion, Defendant argues that his constitutional rights were violated due to the "improper and unreasonably lengthy detention of the vehicle [in which he was riding] and its occupants, and the subsequent warrantless search of Defendant's person." [Doc. 119, p. 4]. Defendant asserts that because the search of his person was the result of an unconstitutional detention, all evidence found during the search of his person must be suppressed. *Id.* Defendant further argues that during the stop he was subjected to custodial interrogation without being advised of his *Miranda* rights. As such, Defendant argues that any pre-*Miranda* statements he made must be suppressed. *Id.* In response, the United States asserts that the traffic stop was lawful and was not unnecessarily prolonged, and that law enforcement's questions to Defendant were permissible. For these reasons, the United States argues that all evidence seized from Defendant's person and the statements he made are admissible. [Doc. 127, p. 1]. The parties concur that passengers of a vehicle are seized within the meaning of the Fourth Amendment during a traffic stop and therefore have standing to challenge the stop. [Doc. 119, p. 2; Doc. 127, p. 6]. Accordingly, Defendant's standing to challenge the vehicle stop is not at issue here.

**II. FINDINGS OF FACT**

On July 1, 2023, Basil Williams ("Mr. Williams") was driving his 2012 Honda Pilot while working as an Uber driver in Johnson City, Tennessee. Mr. Williams testified that he accepted a ride request to pick up a passenger, who turned out to be Defendant, at the Quality Inn[1] on Roan

---

[1] At the time of the stop, Mr. Williams advised Officer Greene that he had picked up Defendant at the Comfort Inn. The Court does not find this minor discrepancy to have any negative impact on Mr. Williams' credibility, particularly considering the events about which Mr. Williams' was testifying took place nearly 8 months prior to the hearing.

Street in Johnson City to be taken to the 900 block[2] of Boone Street in Johnson City. Within 10-15 minutes of dropping Defendant off at a residence on Boone Street, Mr. Williams received and accepted another request from Defendant to be picked up at the same Boone Street address and taken back to Roan Street. While in route to take Defendant back to Roan Street, Mr. Williams was stopped by Johnson City Police Officer Skyler Greene (Officer Greene) near the intersection of Buffalo Street and Roan Street due to an inoperable brake light.

Officer Greene testified that, prior to making the stop, he had received a call from an unmarked unit asking him to conduct a stop of Mr. Williams' vehicle because the vehicle had an inoperable brake light and had been seen making a stop in a high crime area. Officer Greene testified that in addition to being advised of the inoperable brake light by another officer, he also observed it personally before making the stop. The inoperable brake light on Mr. Williams' vehicle can be seen on the portion of the dash camera video[3] from Officer Greene's cruiser captured prior to the stop. [Ex. 1].[4]

Once Mr. Williams' vehicle was stopped, Officer Green approached the driver's side window and advised Mr. Williams that he had stopped him because he had an inoperable brake light on the passenger side of the vehicle. [Ex. 2, 19:47:30]. Defendant was sitting in the rear passenger seat of the vehicle. While Mr. Williams was looking for his proof of insurance, Defendant, without prompting, advised Officer Greene that Mr. Williams was an Uber driver. *Id.* at 19:47:43. Once Mr. Williams provided Officer Greene with his driver's license, registration,

---

[2] Mr. Williams was unable to recall the exact address of the destination, but he testified he believed it was either 913 or 915 Boone Street.
[3] Officer Greene's dash camera video was admitted as Exhibit 1 to the suppression hearing and his body camera video was admitted as Exhibit 2.
[4] There is no timestamp on the dash camera video.

and proof of insurance, Officer Greene returned to his cruiser to check Mr. Williams' information. *Id.* at 19:48:30.

Approximately three minutes later, Officer Greene returned to Mr. Williams' vehicle and asked him to step out, and Mr. Williams complied. *Id.* at 19:51:41. Once Mr. Williams was out of the car, he and Officer Greene walked to the front of Officer Greene's patrol car which was parked just a few feet behind Mr. Williams' vehicle. Officer Greene then began questioning Mr. Williams about the details of his current Uber trip. *Id.* at 19:51:54. Mr. Williams advised Officer Greene of the pickup and drop off locations for both rides Defendant had taken with him that day, at one point retrieving his phone from his vehicle so he could provide accurate details. *Id.* at 19:52:28. Mr. Williams then, without prompting, told Officer Greene he had a feeling something was wrong when he picked up Defendant at the Boone Street address. After this statement from Mr. Williams, Officer Greene advised him that the area of Boone Street where Defendant was picked up was known for narcotics. *Id.* at 19:53:15. Officer Greene asked Mr. Williams if he was aware of any narcotics in his vehicle, and Mr. Williams said no. *Id.* at 19:53:28. Officer Greene asked Mr. Williams if he minded if the officer checked the vehicle for narcotics, to which Mr. Williams replied: "I don't care for you to search." *Id.* at 19:53:30. Officer Greene asked Mr. Williams to remain outside the vehicle and said he would get the passenger out of the vehicle and then conduct a "quick search." During his testimony, Officer Greene explained that for officer safety it is department policy that a second unit be present to assist with searches, so he had to wait for backup before undertaking a search of Mr. Williams' vehicle.

Having received permission to search, Officer Greene approached the rear passenger side of Mr. Williams' vehicle and asked Defendant to exit the vehicle. *Id.* at 19:54:16. Officer Greene asked Defendant for his ID, and Defendant advised he did not have an ID with him. *Id.* at 19:54:30.

Defendant told Officer Greene that his name was Tim Jones and provided a birthdate of 6-2-66. *Id.* at 19:54:45. Defendant told Officer Greene that he had gone to Boone Street to visit his girlfriend but said he did not know the exact address. *Id.* at 19:55:01. Officer Greene then asked Defendant if he had any narcotics, weapons, or anything illegal on him or if there were any items in the car belonging to him, and Defendant answered no. *Id.* at 19:55:13. Officer Greene advised Defendant that Mr. Williams had given consent for the vehicle to be searched and patted Defendant down for weapons, finding none. *Id.* at 19:55:24. Officer Greene asked Defendant to stand at the front of Mr. Williams' vehicle and told him he was just waiting for backup to arrive so he could search the car. *Id.* at 19:55:37. While waiting, Officer Greene engaged Defendant in small talk, asking about his girlfriend. *Id.* at 19:55:47. After a few seconds of silence, Defendant asked Officer Greene what he was investigating. *Id.* at 19:56:25. Officer Greene and Defendant then engaged in conversation about the narcotics activity in the Boone Street area. *Id.* at 19:56:40. Defendant expressed that he was aware of narcotics activity in the area and knew the names of some of the people involved in it. *Id.*

By this time, another officer had arrived on the scene, approximately ten minutes after Mr. Williams' vehicle was initially stopped. The second officer proceeded to the front of Mr. Williams' vehicle where Defendant was located, and Officer Greene retrieved an electronic device from his patrol car so he could run Defendant's information. *Id.* at 19:57:35. Officer Greene asked Defendant if he had a Tennessee ID and asked him for his social security number. *Id.* at 19:58:21. Defendant advised his social security number was 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. Officer Greene asked Defendant to repeat his social security number, and Defendant provided 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. *Id.* at 19:58:39. After having issues finding a match for the identifying information Defendant provided, Officer Greene

asked Defendant if he had another name and Defendant replied that he did not. *Id.* at 19:59:56. When asked to provide his address, Defendant stated Arnie Street in Elizabethton. *Id.* at 20:00:09.

At this point, Officer Greene placed Defendant in handcuffs and expressed doubts that Defendant was being truthful about his identity. *Id.* at 20:00:30. The officer specifically addressed with Defendant how he had switched the numbers around when asked for his social security number and the fact that the name and date of birth Defendant provided were returning no matches. *Id.* During his testimony, Officer Greene explained that Defendant was placed in handcuffs for officer safety because they did not know why he was lying about his identity. Defendant then advised that his name was Timothy Robert Malone and provided a date of birth of 6-8-67. *Id.* at 20:00:45. At that point, Defendant further admitted that he thought there was an outstanding warrant for his arrest. *Id.* at 20:00:55. A search of Defendant's correct information indicated Defendant did have an outstanding arrest warrant for a parole violation. *Id.* at 20:01:54. Officer Greene again asked Defendant if he had anything illegal on him, and Defendant stated he did not. Officer Greene then advised Defendant he was being detained while they confirmed his warrant. *Id.* at 20:02:08.

Officer Greene told Defendant that he could face an additional charge for lying and asked Defendant if there was anything illegal on him, including fentanyl, methamphetamine, and pills. *Id.* at 20:03:32. Defendant hesitated before answering, and eventually stated he had methamphetamine on his person. *Id.* at 20:04:00. When Officer Greene asked Defendant where the methamphetamine was located, Defendant shook his leg and caused a bag of methamphetamine to fall from his person onto the ground where it broke open. *Id.* at 20:04:05. Officer Greene then advised Defendant he was in custody and advised him of his *Miranda* rights. Defendant confirmed that he understood his *Miranda* rights and did not want to answer any questions. *Id.* at 20:08:28.

After his vehicle was searched, Mr. Williams was released from the scene without receiving a citation.

### III. ANALYSIS

#### a. Reasonableness of the Stop

The Fourth Amendment guarantees "[t]he right of the people to be secure ... against unreasonable searches and seizures...." U.S. Const. amend. IV. A traffic stop by a police officer is a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A traffic stop is permissible when law enforcement has probable cause that a traffic violation has occurred. *United States v. Simpson*, 520 F.3d 531, 539-40 (6th Cir. 2008). During a traffic stop, both the driver and passengers of the vehicle are "seized within the meaning of the Fourth Amendment and thus may challenge the legality of the stop." *United States v. Campbell*, 549 F. 3d 364, 371 (6th Cir. 2008) (citing *Brendlin v. California*, 551 U.S. 249, 250 (2007)). Consequently, a passenger may also challenge the length of detention after the stop is made. *Id.* Officers may order drivers and passengers out of the vehicle during a traffic stop. *United States v. Noble*, 762 F.3d 509, 521 (6th Cir. 2014). Once out of the car, officers may conduct a pat down for weapons "if the officer reasonably concludes that the driver [or passenger] 'might be armed and presently dangerous.'" *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977)). Additionally, law enforcement may ask both the driver and passenger for identification during a traffic stop to check whether they both have valid identification and whether they have any outstanding warrants, "even where there was no reasonable suspicion of any wrongdoing by the passenger[]." *United States v. Alexander*, 467 F. App'x 355, 362 (6th Cir. 2012) (citing *United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010)).

"When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *United States v. Lott*, 954 F.3d 919, 922 (6th Cir. 2020); *see also United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (observing that "[t]he stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop"). At the same time, probable cause to believe a traffic violation has occurred "does not allow the police to detain a suspect indefinitely." *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005). A traffic stop may last no longer than necessary to accomplish the purpose of the stop. *United States v. Rodriguez*, 575 U.S. 348, 354 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "Authority for the seizure thus ends when the tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (citing *United States v. Sharp*, 470 U.S. 675, 686 (1985)). However, the Supreme Court has held that "the Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." *Id.* At the same time, the Supreme Court has cautioned that "the seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" *Id.* at 355 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* at 345 (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)) (internal citations omitted). Notably, "asking a detained motorist for consent to search his vehicle does not necessarily turn a reasonable traffic stop into an unreasonable one." *United States v. Aguilera-Pena*, 426 F. App'x 368, 370 (6th Cir. 2011) (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

As an initial matter, the Court notes that probable cause for the traffic stop existed because prior to the stop Officer Greene observed that Mr. Williams' right brake light was inoperable. *See*

*Simpson*, 520 F.3d at 539-40. Having determined the stop was lawful, the Court turns to the issue of whether the duration of the stop was reasonable.

Defendant argues that the traffic stop was impermissibly extended when Officer Greene asked Mr. Williams to exit the vehicle and asked him questions regarding the details of his travel. [Doc. 118, p. 2].[5] Despite Defendant's assertion that Officer Greene questioned Mr. Williams extensively regarding Defendant, who was Mr. Williams' passenger, the video evidence submitted by the United States reveals that Officer Greene asked Mr. Williams only a few questions, primarily regarding the details of his travel, and then asked for consent to search the vehicle. [Ex. 2, 19:51:41]. In fact, Officer Greene's only question specifically regarding Defendant was whether Defendant was an Uber passenger. *Id.* Mr. Williams advised Officer Greene without prompting that he suspected something was wrong when he picked up Defendant. *Id.* In total, approximately six minutes elapsed between the initiation of the traffic stop and Mr. Williams' providing consent to search the vehicle.

Defendant likens the case at hand to *United States v. Bonilla*, 357 F. App'x 693 (6th Cir. 2009). There, the Sixth Circuit found that a traffic stop was impermissibly extended when the officer stopped writing a traffic citation and placed the driver and passenger in the back of police cruisers before having a canine conduct a free air sniff. *Bonilla*, 357 F. App'x at 697-98. In making this determination, the Sixth Circuit noted that the officer abandoned the initial purpose of the stop and began investigating drug activity, which was not supported by reasonable suspicion. *Id.* Unlike

---

[5] In its written Response to Defendant's motion, the United States argued in the alternative that Defendant's failure to provide truthful information about his identity provided reasonable suspicion for Officer Greene to extend the stop to investigate beyond the time necessary to address the initial reason for the traffic stop. [Doc. 127, p. 11-13]. However, during the hearing held in this matter, Defendant's counsel clarified that it was the approximately six-minute period before Mr. Williams gave consent to search his vehicle that Defendant was challenging as an unreasonable duration for the traffic stop. As such, the Court finds it unnecessary to address the Government's reasonable suspicion argument as it relates to events that happened outside the challenged timeframe.

*Bonilla*, the stop at issue here was not extended for the purpose of conducting a canine sniff of the vehicle. Additionally, no facts have been presented in this case to support a conclusion that any concerns Officer Greene had about the traffic stop were "overshadowed by [his] suspicions of the contents of the vehicle." *Id.* at 697.

Instead, the Court finds the circumstances of this case are similar to those in *United States v. Aguilera-Pena*, 426 F. App'x 368 (6th Cir. 2011) and *United States v. Burton*, 334 F.3d 514 (6th Cir. 2003). In those cases, the Sixth Circuit held that a traffic stop was not impermissibly extended by law enforcement asking extraneous questions when only a handful of questions were asked, the questions were not unusually intrusive, and that the asking of them did not cause the traffic stop to be any more coercive than is typical of such a stop. *Aguilera-Pena*, 426 F. App'x at 371; *Burton*, 334 F.3d at 518. Further, the *Aguilera-Pena* court specifically noted that "no reasonable suspicion or probable cause beyond that necessary for the initial traffic stop was required for the extraneous questions." 426 F. App'x at 371 (citing *Burton*, 334 F.3d at 518-19).

Here, Officer Greene's questioning of Mr. Williams lasted approximately two minutes before Mr. Williams consented to the search of his vehicle. [Ex. 2, 19:53:30]. The Court notes that the time would have been even shorter had Mr. Williams not taken the time to retrieve his phone from his vehicle so he could provide fully accurate details about his travel using the Uber app. *Id.* Further, the body camera video shows that Officer Greene's questions were not unusually intrusive and his asking of them did not make the traffic stop more coercive than a typical stop. *Aguilera-Pena*, 426 F. App'x at 371. As such, the Court concludes that Officer Greene's questioning of Mr. Williams and his request of him for consent to search his vehicle did not impermissibly extend the duration of the traffic stop.

Defendant also argues that he was subjected to a warrantless search of his person once he exited the vehicle in violation of his constitutional rights. [Doc. 118, p. 4]. As stated above, it was permissible for Officer Greene to ask Defendant to exit the vehicle. *Noble*, 762 F.3d at 521. It is also permissible for an officer to conduct a pat down for weapons if "the officer reasonably concludes that the driver [or passenger] might be armed and presently dangerous." *Johnson*, 555 U.S. at 331. Here, Officer Greene did not conduct a full search of Defendant's person once he exited the vehicle, but only conducted a pat down for weapons. Immediately upon Defendant exiting the car, Officer Greene attempted to establish Defendant's identity by asking Defendant for identification. Defendant advised Officer Greene that he did not have an ID with him. Given that Officer Greene could not establish Defendant's identity and knew that Defendant had just made a quick stop in an area known for drug activity, it was reasonable for Officer Greene to conclude that Defendant might be armed and to conduct a pat down for weapons.[6]

### b. Defendant's Statements

Finally, Defendant argues that any statements he made to law enforcement prior to being advised of his *Miranda* rights must be suppressed. [Doc. 118, p. 4]. *Miranda* warnings must be given before an individual is subjected to custodial interrogation. *United States v. Malcolm*, 435 F. App'x 417, 420 (6th Cir. 2011) (citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). "The Supreme Court has defined 'custodial interrogation' as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). The Sixth

---

[6] The Court further notes that even if this initial pat down was not reasonable, it would not have resulted in the suppression of any evidence as no evidence was retrieved from Defendant's person at that time.

Circuit has instructed that the following factors should be considered in making a custody determination:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police…and acquiesced to their requests to answer some questions.

*United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998). Of these factors, one of the most important is whether an officer explicitly informs a suspect that he is not under arrest. *See Coomer v. Yukins*, 533 F.3d 477, 487 (6th Cir. 2008) (stating perhaps the most significant factor in determining that the defendant was not in custody was that an officer told the defendant that she was not under arrest several times). The term 'interrogation' under *Miranda* refers to "any words or actions on the part of the police…that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013). The Sixth Circuit has held that questions "normally attendant to arrest and custody" do not meet this standard. *Id.*

The Court must first examine whether Defendant was in custody within the meaning of *Miranda*. This is easier to accomplish in this case than in most because all of Officer Greene's interactions with Defendant are captured on the video provided by the United States. When Officer Greene initially questioned Defendant regarding his identity, Defendant was advised that Mr. Williams had given consent for the vehicle to be searched and that the officer was waiting for backup to arrive so the search could be conducted. Officer Greene asked Defendant to stand at the front of Mr. Williams' car and did not restrain Defendant in any way. After the name, date of birth, and social security number Defendant provided did not return any matches, Officer Greene placed

Defendant in handcuffs and advised him that he was being detained until his identity could be verified. Officer Greene continued to ask Defendant questions only related to his identity, and Defendant ultimately provided his true name and date of birth. Defendant then advised Officer Greene that he believed he had a warrant, and Officer Greene confirmed that there was a match with Defendant's name and a warrant, but the officer had to verify the warrant before taking further steps. Officer Greene then advised Defendant that he could face additional charges for lying to law enforcement and asked him if he had anything illegal on his person.

At this point, the purpose of the questioning was to determine whether Defendant had any weapons or illegal items on his person. Officer Greene used a pleasant, conversational tone throughout his interactions with Defendant and his questions to Defendant were not hostile or coercive. The questioning was also very brief, limited to only a few questions. Further, Defendant had been advised that he was being detained and that Officer Greene was waiting for Defendant's warrant to be verified. Despite Defendant being handcuffed, the Court finds that the totality of the circumstances demonstrate that Defendant was not in custody when he was being questioned by Officer Greene. *See Salvo*, 133 F.3d at 950.

Moreover, even if the Court did find that Defendant was in custody, Officer Greene's questions to Defendant did not amount to interrogation within the meaning of *Miranda*. First, the Court notes that questions "reasonably related to the police's administrative concerns, such as the defendant's name, address, height, weight, eye color, [and] date of birth…" do not require *Miranda* warnings. *United States v. Pacheco-Lopez*, 531 F.3d 420, 423 (6th Cir. 2008) (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990); *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993)). Additionally, Officer Greene's question regarding whether Defendant had anything illegal on his

person is a question "normally attendant to arrest and custody" for purposes of officer safety and does not meet the standard for interrogation under *Miranda*.[7]

## IV. CONCLUSION

For the reasons outlined above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 118] be **DENIED**.[8]

Respectfully submitted,

/s/Cynthia Richardson Wyrick
United States Magistrate Judge

---

[7] The Court further notes that the methamphetamine on Defendant's person would have inevitably been discovered during a search of Defendant incident to lawful arrest since there was an active warrant for his arrest outstanding. *See United States v. Latham*, 763 F. App'x 428, 430 (6th Cir. 2019) (noting the search incident to lawful arrest exception to the warrant requirement and explaining its purpose is to "ensure that a suspect does not have immediate access to weapons or the ability to destroy evidence.") (citing *Arizona v. Gant*, 556 U.S. 332 338 (2009)). As such, the methamphetamine would not be subject to the exclusionary rule pursuant to the doctrine of inevitable discovery. *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (recognizing that the inevitable discovery doctrine applies when "evidence would have been discovered pursuant to a routine procedure.").

[8] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).