UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:23-CR-00120-11-JRG-CRW |
| | ) | |
| TIMOTHY ROBERT MALONE | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on United States Magistrate Judge Cynthia R. Wyrick's Report and Recommendation [Doc. 140], recommending that this Court deny Defendant Timothy Robert Malone's Motion to Suppress [Doc. 118]. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Suppress [Doc. 118].

### I. BACKGROUND

#### A. Factual Background

On the evening of July 1, 2023, the narcotics unit of the Johnson City Police Department requested a marked unit to execute a traffic stop. [Audio of Hr'g at 9:39:48 (on file with the Court)]. The vehicle in question, a silver Honda Pilot, had just left the North Boone Street area, where it had been seen several times in the vicinity of a known drug house that was under surveillance. [*Id.* at 9:40:19]. Having learned this information, Officer Skylar Greene promptly located the Honda Pilot, and after observing that the rear passenger brake light was not operational, executed a traffic stop. [*Id.* at 9:40:52].

After executing the stop, Officer Greene informed the driver, Basil Williams, that the Honda had a non-working brake light [Ex. 2 at 19:47:27].[1] Williams handed Officer Greene his license and Officer Greene asked to see proof of insurance. [*Id.* at 19:47:33]. While Williams

---

[1] At the evidentiary hearing, Officer Greene's dash camera video, which shows the non-working brake light, was admitted as Exhibit 1 and his body camera video was admitted as Exhibit 2.

was searching for his insurance documentation, a passenger in the back seat, later identified as Defendant, told Officer Greene that the driver was an Uber driver, a fact which Williams confirmed. [*Id.* at 19:47:44]. Williams showed Officer Greene his proof of insurance and upon request, provided Officer Greene with his registration. [*Id.* at 19:48:12]. Officer Greene then returned to his patrol car where he ran a license status check and verified the vehicle's information. [Audio of Hr'g at 9:43:33]. While in his police cruiser, Officer Greene contacted his sergeant and informed the narcotics unit that he had made the traffic stop. [*Id*. at 9:43:48].

Then, Officer Greene returned to the Honda and asked Williams to step out of the vehicle. [Ex. 2 at 19:51:30]. As Officer Greene explained at the evidentiary hearing, his purpose in having Williams exit his vehicle was to investigate the vehicle's presence in a high narcotics area.[2] Williams exited the vehicle, and the following exchange took place:

> Officer Greene: You don't have any weapons or anything?
>
> Williams: No sir.
>
> Officer Greene: I've got a quick question for you. So you say that you're an Uber driver.
>
> Williams: I am.
>
> Officer Greene: Okay. So this guy is just a guy that–
>
> Williams: I dropped him off at Burger King.
>
> Officer Greene: Okay. Where'd you pick him up at?
>
> Williams: I picked him up at the Comfort Inn down there.
>
> Officer Greene: At the Comfort Inn? Okay.
>
> Williams: And I'm taking him back.

---

[2] At the evidentiary hearing, Officer Greene was directly asked why he had ordered Williams to exit the vehicle. Officer Greene replied, "Due to the vehicle leaving a high narcotics area and high crime area I was speaking to him about that, kind of getting a little bit more information about where they had come from." [Audio of Hr'g at 9:44:50].

> Officer Greene: Where'd you pick him up from?
>
> Williams: I took him down there. And I dropped him off and then I got the second call from the Boone Street address and I'm taking him back to [unintelligible] on Boone Street.
>
> Officer Greene: On Boone Street? Okay. Do you know the address over there?
>
> Williams: 915, I think.
>
> Officer Greene: 915?
>
> Williams: Yeah.
>
> Officer Greene: Okay.
>
> Williams: [unintelligible] If I'd thought about bringing my phone out . . . I think it's right–
>
> Officer Greene: You can if you want. Yeah, that's fine. We're just having a conversation that's all.

[*Id.* at 19:51:51]. With Officer Greene's permission, Williams retrieved his phone from the Honda and returned to where Officer Greene was standing. [*Id.* at 19:52:28]. Then Williams began looking through his phone, while Officer Greene asked him questions:

> Officer Greene: So you got an order to pick him up down here and then you went up to this address and then you got another one right after that to pick him up, the same guy or is it–?
>
> Williams: Yeah same guy.
>
> Officer Greene: Same guy? Okay.
>
> Williams: I don't think it will tell me the actual address . . . It just tells me Boone Street, but I'm almost positive . . . I'm almost positive its 915 Boone Street.

[*Id.* at 19:52:43]. Then, the following exchange took place:

> Williams: I had a feeling when I picked him up there was something wrong with that. And I have to report that to Uber 'cause that way I don't get matched back to him.

3

> Officer Greene: No you're good. With that being said, okay, that area is known for narcotics, okay. I understand you're an Uber driver. I wouldn't suspect you of having anything to hide, okay. Is there anything that you know of, no narcotics whatsoever?
>
> Williams: No sir. Nothing in my vehicle that I'm aware of.
>
> Officer Greene: Would you mind if I check?
>
> Williams: I don't care if you search.

[*Id.* at 19:53:09].

After obtaining consent to search, Officer Greene placed Williams' license and registration on the front seat of his cruiser. [*Id.* at 19:54:05]. Then, Officer Greene instructed Defendant to exit the vehicle and requested his identification. [*Id.* at 19:54:20]. Defendant told Officer Greene he did not have his ID with him and that his name was "Tim Jones" with a birthday of "6/2/66." [*Id.* at 19:54:30]. Officer Greene then questioned Defendant about his travel that day, asked if he had drugs or weapons, and conducted a pat down search. [*Id.* at 19:54:56].

When his sergeant arrived on scene to assist with the search, Officer Greene returned to his cruiser and ran the information that Defendant had provided but could not find a match. [Audio of Hr'g at 9:47:08]. Officer Greene asked Defendant for his social security number, and Defendant told Officer Greene that his social security number was "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," but shortly afterward said that the number was "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." [Ex. 2 at 19:58:27]. When Officer Greene still could not find a match based on the information Defendant provided, Officer Greene placed Defendant in handcuffs and informed Defendant that he was temporarily detained because his identity could not be verified [*Id.* at 19:59:57].

Almost immediately after being placed in handcuffs, Defendant told Officer Greene that his name was Timothy Robert Malone, with a birthdate of 6/8/67, and that he was "pretty sure"

4

he had a warrant. [*Id.* at 20:00:47]. Officer Greene checked the information Defendant provided and found that Defendant had an outstanding arrest warrant for a parole violation. [*Id.* at 20:01:38]. The warrant was later confirmed to be valid. [*Id.* at 20:22:42].

After discovering the warrant, Officer Greene asked Defendant if he had anything illegal on him, listing off several kinds of drugs, and Defendant said that he had "meth." [*Id.* at 20:03:10]. Officer Greene asked where the drugs were and Defendant shook his leg, causing a bag to fall from his pants onto the ground. [*Id.* at 20:04:04]. Officer Greene told his sergeant—who was engaged in searching the Honda—that he had found a "giant bag" and indicated that they could discontinue the search. [*Id.* at 20:04:15]. At that point, Williams' license and registration were returned to him and he was allowed to leave the scene without being issued a ticket or warning. [*Id.* at 20:04:30].

B. **Procedural Background**

In October 2023, a grand jury indicted Defendant on one count of conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). [Doc. 3 at 1–2]. Subsequently, Defendant moved to suppress the evidence obtained from him by law enforcement during the July 1, 2023 traffic stop. [Doc. 118]. After holding an evidentiary hearing, the Magistrate Judge issued a Report and Recommendation, recommending that the Motion to Suppress be denied. [Doc. 140]. In making that recommendation, the Magistrate Judge concluded that the traffic stop was lawful, its duration was reasonable, and Defendant's *Miranda* rights were not violated. [*Id.*]. Defendant filed a timely Objection to the Report and Recommendation, contesting the Magistrate Judge's legal conclusion that the duration of the stop was lawful [Doc. 151]. The United States responded. [Doc. 155].

Defendant did not object to the Magistrate Judge's legal conclusions that the initial stop was lawful and that his *Miranda* rights were not violated. After reviewing the record before the Court and finding the Magistrate Judge's legal conclusions on those issues to be correct, the Court **ADOPTS** the portion of the Report and Recommendation concluding that Defendant's constitutional rights were not violated by the initial traffic stop or police questioning before the issuance of a *Miranda* warning. [Doc. 140 at 8–9, 13–14]. The Court will address only Defendant's argument that the duration of the traffic stop was unlawful.

## II.   STANDARD OF REVIEW

When reviewing a magistrate judge's recommendation on a motion to suppress, the Court must conduct a de novo review of those portions of the recommendation to which objection has been made. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). A de novo review requires the Court "to give fresh consideration" to the record before it. *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quotation omitted). "The district court is not required to review—under a de novo or any other standard—'any issue that is not the subject of an objection.'" *Dickson v. Green Dot Pub. Sch.*, No. 22-cv-2070, 2022 U.S. Dist. LEXIS 157139, at *5 (W.D. Tenn. Aug. 31, 2022) (quoting *Thomas v. Arn*, 474 U.S. 140, 150 (1985)). After its review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

## III.   ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . and effects against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a "seizure" of "persons" within the meaning of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 251 (2007) (holding that passengers as well as the driver are seized

6

Case 2:23-cr-00120-JRG-CRW   Document 214   Filed 09/13/24   Page 6 of 16   PageID #: 561

during a traffic stop). Therefore it must be reasonable. At its inception, a traffic stop is reasonable if there was probable cause to believe a traffic violation occurred, regardless of the officer's subjective motivation for making the stop. *Whren v. United States*, 517 U.S. 806, 810, 813 (1996). However, a lawfully initiated traffic stop can become unreasonable if it exceeds the scope or duration necessary to address the traffic infraction. *United States v. Whitley*, 34 F.4th 522, 529 (6th Cir. 2022) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). "If an officer exceeds the scope or duration of a traffic stop, he must have 'reasonable suspicion' [of criminal activity] to continue the stop on unrelated grounds." *Id.* (citing *Rodriguez*, 575 U.S. at 354–55).

Here, Defendant challenges only the duration of the stop. The traffic stop was unreasonably prolonged, according to Defendant, after Officer Greene completed his verification of Mr. Williams' driver's license and before Officer Greene removed Defendant from the vehicle. [Doc. 151 at 3]. Defendant asserts that Officer Greene's questioning of Williams during that time period "had nothing to do with the traffic stop" and was not justified by reasonable suspicion of criminal activity. [*Id.*]. Because the duration of the stop violated the Fourth Amendment, Defendant contends that the evidence obtained against him should be suppressed as "fruit" of an illegal detention. [Doc. 151 at 3].

As discussed below, the Court agrees with Defendant that the stop was prolonged without reasonable suspicion. However, evidence obtained from Defendant after the discovery of his outstanding arrest warrant is attenuated from that illegality, and therefore should not be suppressed.

   A.   **Prolonging of the Traffic Stop**

The Supreme Court explained the lawful parameters of a traffic stop in *Rodriguez v. United States*, 575 U.S. 348 (2015). "A seizure justified only by a police-observed traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez*, 575 at 350–51 (cleaned up). The mission of issuing a ticket includes incidental inquiries such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355. Once "the tasks tied to the traffic infraction are—or reasonably should have been—completed," the officer no longer has authority to continue the detention. *Id.* at 354.

On-scene investigation into other crimes is not part of the traffic stop's mission. *Id.* at 356; *United States v. Lott*, 954 F.3d 919, 924 (6th Cir. 2020) (citing *Rodriguez*, 575 U.S. at 355) ("Even minor police actions aimed at 'detecting evidence of ordinary criminal wrongdoing' or any purpose beyond addressing the traffic infraction are not tasks incident to the stop."). An officer is not strictly prohibited from pursuing unrelated investigations. However, he may not do so if the extraneous inquiry "prolongs—*i.e.*, adds time to—the stop." *Rodriguez*, 575 at 355, 357. "[A]ny extension of a traffic stop absent independent reasonable suspicion is improper. This is a bright-line rule." *Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020) (citing *Rodriguez*, 575 U.S. at 355–57); *see also United States v. Alderson*, No. 3:21-cr-00068, 2022 U.S. Dist. LEXIS 144379, at *11 (M.D. Tenn. Aug. 12, 2022) ("Importantly . . . 'prolonging' includes any extension of time, no matter how minimal.").

Here, Officer Greene initially pursued the mission of the traffic stop. After executing the stop, he told Williams about the inoperable brake light, checked Williams' proof of insurance, and obtained Williams' license and registration. Officer Greene then returned to his cruiser and

verified Williams' information.[3] All of these actions are routine inquiries incident to a traffic stop.

Then, Officer Greene deviated from his mission. After verifying Williams' license and registration, Officer Greene possessed all the information he needed to conclude the traffic stop. However, he did not issue a ticket or a warning for the brake light. Nor did he return Williams' license and registration. Instead, he directed Williams to exit the vehicle[4] and, out of the hearing of Defendant, posed a series of questions regarding where Defendant had travelled on Boone Street. Officer Greene then observed that Boone Street was a high narcotics area and asked Williams if he had narcotics in the vehicle. When Williams denied this, Officer Greene requested consent to search just to "make sure" there were no drugs. During this time period—from Officer Greene's request for Williams to exit the vehicle to Williams' consent to search—Officer Greene took no action in furtherance of the traffic stop, which he had at that point abandoned. Instead, as Officer Greene acknowledged at the evidentiary hearing, his questioning of Williams was aimed at uncovering information about narcotics.

In finding that the stop was not unlawfully extended, the Magistrate Judge compared this case to *United States v. Aguilera-Pena*, 426 F. App'x 368 (6th Cir. 2011) and *United States v. Burton*, 334 F.3d 514 (6th Cir. 2003). [Doc. 140 at 10]. In those cases, the Sixth Circuit held that a traffic stop was not impermissibly extended where an officer asked only a handful of

---

[3] The Court notes that while Officer Greene was in the patrol car checking Williams' information, Officer Greene engaged in a brief conversation with the narcotics unit. That conversation was not part of the mission of the traffic stop. However, it appears, based on the body camera video, that Officer Greene was checking Williams' information during that conversation. Hence, the Court does not find that Officer Greene's communication with the narcotics unit measurably extended the stop.

[4] As a rule, an officer may order a driver to exit his vehicle incident to a traffic stop. *Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977) (per curiam). However, that rule does not apply when, as here, the measure is performed in furtherance of on-scene investigation into other crimes. *Rodriguez v. United States*, 575 U.S. 348, 356 (2015) ("On-scene investigation into other crimes . . . detours from [the traffic stop's] mission. So too do safety precautions taken in order to facilitate such detours.").

9

extraneous questions, those questions were not unusually intrusive, and the stop did not become unduly coercive. The Magistrate Judge found no Fourth Amendment violation here, since Officer Greene only questioned Williams for approximately two minutes and those questions, which were mostly about Williams' travel, were not unusually intrusive and did not make the stop more coercive than a typical traffic stop. [*Id.*].

*Aguilera-Pena* and *Burton* share some factual similarities with the instant case. However, they were both decided before the Supreme Court's decision in *Rodriguez*. Before *Rodriguez*, Sixth Circuit caselaw recognized a de minimis exception to the prolongation of a traffic stop. *See, e.g. United States v. Everett*, 601 F.3d 484, 494–95 (6th Cir. 2010) (finding that the prolonging of a traffic stop is permissible if the officer pursued the mission of the stop with "reasonable diligence" and "the 'totality of the circumstances surrounding the stop' indicates that the duration of *the stop as a whole* . . .was reasonable") (emphasis in original). In *Rodriguez*, the Supreme Court expressly rejected that approach. *See Rodriguez*, 575 at 357 (rejecting the view that prolonging a traffic stop is permissible "so long as the officer is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable in relation to the duration of similar traffic stops"). In light of *Rodriguez*'s rejection of a de minimis exception, the continued validity of *Aguilera-Pena* and *Burton* is seriously in doubt. *See Whitley*, 34 F.4th at 529 (observing that "post-*Rodriguez*, . . . prior caselaw permitting de minimis extensions of traffic stops is no longer good law").

The Court agrees with the Magistrate Judge that Greene's questioning of Williams was relatively brief. But given *Rodriguez*'s bright line rule against suspicionless extensions of a traffic stop, a two-minute extension, such as occurred here, is constitutionally significant.[5]

---

[5] Post-*Rodriguez* courts have found that less time than is at issue here constituted an unlawful extension of a traffic stop. *See e.g. United States v. Lujan*, No. 4:17-cr-37, 2018 U.S. Dist. LEXIS 132229, at *16–17 (E.D. Tenn. Aug. 7,

Moreover, the relative coerciveness of an officer's questions is not a deciding factor in determining whether the duration of a stop was reasonable. What matters here is that Officer Greene added time to the stop by pursuing an unrelated criminal investigation.[6] As such, the stop was unreasonably prolonged unless Officer Greene had reasonable suspicion of criminal activity. *Rodriguez*, 575 U.S. at 354–55.

### B. Reasonable Suspicion

Police officers "may briefly stop an individual for investigation if they have 'reasonable suspicion' that the person has committed a crime." *Houston v. Clark County Sheriff Deputy John Does 1-5,* 174 F.3d 809, 813 (6th Cir. 1999). Reasonable suspicion is a less demanding standard than probable cause. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). However, it is more than an ill-defined hunch; it requires "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). Whether an officer's suspicions are reasonable depends on the totality of the circumstances. *Id.*

When Officer Greene directed Williams to exit the Honda, he certainly had a hunch that criminal activity was afoot. He knew, from communicating with the narcotics unit, that the Honda had just left an area known for drug traffic, where Williams' vehicle had been seen

---

2018) (twenty seconds of "roadside interrogation"); *United States v. Dehoyos*, 652 F. Supp. 3d 240, 254 (N.D.N.Y. 2023) (one minute sixteen seconds while officer talked on phone and interviewed the defendant for a second time); *United States v. Brinson*, No. CR 119-096, 2019 U.S. Dist. LEXIS 223821, at *8 (S.D. Ga. Dec. 4, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 875 (S.D. Ga. Jan. 3, 2020) (one minute forty seconds of questioning defendant to determine if he was transporting drugs).

[6] The extension of the traffic stop in this case resembles that in *United States v. Alderson*, No. 3:21-cr-00068, 2022 U.S. Dist. LEXIS 144379 (M.D. Tenn. Aug. 12, 2022). In *Alderson*, an officer initiated a traffic stop on the defendant's vehicle based on suspicion of unlawful window tint. *Id.* at *14–15. After verifying the defendant's license, registration and insurance and confirming there were no outstanding warrants, the officer did not issue a ticket or tell Alderson he was free to go. *Id.* at *15–16. Instead, the officer ordered the defendant out of the vehicle, asked questions unrelated to the stop, such as whether there was contraband in the vehicle, and obtained consent to search. *Id.* at *16. The court found that the officer's unrelated investigation unlawfully extended the stop because "prolonging a traffic stop for any length of time beyond that necessary to complete the functions associated with the traffic stop itself is no longer permissible unless the officers had reasonable suspicion to justify doing so." *Id.* at *20.

11

several times. However, Officer Greene was not aware of any particular facts to tie Williams or Defendant to narcotics or other criminal activity. The fact that they were driver and passenger in a vehicle that had recently traveled to a high crime area was not, in and of itself, sufficient to support reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."). Moreover, nothing arose during Williams' conversation with Officer Greene to give rise to reasonable suspicion. Although Williams said that he "had a feeling" there was something amiss regarding Defendant, that feeling was not supported by any facts.

Officer Greene certainly developed reasonable suspicion later in the stop, due to Defendant's misinformation about his identity. But at the time Officer Greene questioned Williams, reasonable suspicion was lacking. Because Officer Greene prolonged the traffic stop, without reasonable suspicion of criminal activity, the stop was unlawfully extended.

### C.     "Fruit of the Poisonous Tree"

Finally, the Court must determine whether the evidence obtained from Defendant after the traffic stop was extended should be suppressed. "The exclusionary rule generally bars the admissibility at trial of tangible evidence, as well as verbal statements, acquired through unconstitutional means." *United States v. Akridge*, 346 F.3d 618, 623 (6th Cir. 2003) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). A supplement to the exclusionary rule is the "fruit of the poisonous tree" doctrine, which "bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011) (citation omitted). "The doctrine ensures that the government cannot achieve indirectly what it is forbidden to accomplish directly." *United States v. Leake*, 95

F.3d 409, 411 (6th Cir. 1996). Here, Defendant claims that all evidence obtained as a result of the extended traffic stop should be suppressed as fruit of the poisonous tree. [Doc. 151 at 2].

"Not all evidence the discovery of which shares some causal connection to an unconstitutional seizure should be suppressed, however." *Galaviz*, 645 F.3d at 354. Evidence is not fruit of the poisonous tree if "the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstances so as to remove the 'taint' imposed upon the evidence by the original illegality." *United States v. Crews*, 445 U.S. 463, 471 (1980). Although the parties have not addressed the issue of attenuation, the Court finds it appropriate to do so here. To determine whether attenuation renders evidence admissible, courts consider three factors: (1) the amount of time between the illegality and the discovery of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the illegal conduct. *Utah v. Strieff*, 579 U.S. 232, 239 (2016) (citing *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975)).

The first factor, temporal proximity, weighs in favor of suppressing the evidence. The Supreme Court has explained that this factor does not "favor[] attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." *Strieff*, 579 U.S. at 239 (citation omitted). Here, fewer than nine minutes elapsed between the unlawful prolonging of the stop and the recovery of alleged narcotics from Defendant's person. Defendant's potentially incriminating statements, including statements falsifying his identity, occurred even sooner. Thus, substantial time did not elapse between the illegality and the obtaining of the evidence by law enforcement.

Regarding the second factor, the occurrence of an intervening event, Defendant's outstanding warrant is highly significant. A valid, preexisting arrest warrant is an intervening

13

event that can dissipate the taint of unconstitutional police conduct. *Strieff*, 579 U.S. 232, 235 (finding that an outstanding warrant for the defendant's arrest was a "critical intervening circumstance" that "broke the causal chain" between police illegality and the discovery of evidence); *see also United States v. Gross*, 662 F.3d 393, 412 (6th Cir. 2011) ("[A]n outstanding warrant is an intervening circumstance that weighs strongly toward attenuation."). Defendant's outstanding arrest warrant was valid and wholly unconnected with the traffic stop. Therefore, it is an intervening event between the extension of the stop and the evidence obtained after Officer Greene discovered the warrant. The Court finds no intervening event, however, between the prolongation of the stop and statements Defendant made in response to police questioning *before* Officer Greene learned of the warrant.

Third, the Court turns to the purpose and flagrancy of the illegal conduct. As discussed above, Officer Greene impermissibly extended the stop in order to investigate potential narcotics activity. However, the questions Officer Greene posed to Williams during that time were not particularly coercive. And the time Officer Greene added to the traffic stop, before obtaining consent to search, was not lengthy. Moreover, Officer Greene's other conduct during the stop appears to have been lawful. Therefore, even though Officer Greene impermissibly extended the stop, the Court does not find that his conduct was flagrant. This factor weighs in favor of attenuation.

Having weighed the factors above, the Court finds that the evidence obtained from Defendant *after* the discovery of the warrant is sufficiently attenuated "as to remove the 'taint' imposed upon the evidence by the original illegality." *Crews*, 445 at 471. In reaching that conclusion, the Court acknowledges that temporal proximity weighs in favor of suppressing the evidence. However, the intervening event of the warrant's discovery and the lack of flagrant

misconduct by law enforcement outweigh that factor. Accordingly, the alleged narcotics recovered from Defendant's person and statements that Defendant made after he disclosed the warrant's existence will be admissible.

The attenuation calculus for statements Defendant made *before* the discovery of the warrant is fundamentally different, however. Because no intervening event occurred between the extension of the stop and those statements, the attenuation factors tilt in favor of excluding that evidence. Therefore, statements Defendant made after the stop was extended and prior to his disclosure of the outstanding warrant will be excluded.

## IV. CONCLUSION

Defendant's Motion to Suppress [Doc. 118] is therefore **GRANTED IN PART AND DENIED IN PART**. With respect to evidence obtained during the traffic stop before Defendant told Officer Greene that he had an outstanding warrant, Defendant's Objection to the Report and Recommendation is **SUSTAINED** and his Motion to Suppress is **GRANTED**. However, with respect to evidence obtained by law enforcement after the discovery of the warrant his Objection is **OVERRULED** and his Motion to Suppress is **DENIED**.

As noted above, Defendant has not objected to the Magistrate Judge's findings that the initial traffic stop was lawful and that his *Miranda* rights were not violated. The Court **ADOPTS** the Magistrate Judge's Report and Recommendation [Doc. 140] with respect to those findings, and to the extent Defendant raised those arguments in his Motion to Suppress, his Motion to Suppress is **DENIED**. To the extent that the Report and Recommendation is inconsistent with this opinion, it is **REJECTED**.

So ordered.

ENTER:

        s/J. RONNIE GREER
   UNITED STATES DISTRICT JUDGE